# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TIM LORD,<br><br>    Plaintiff,<br><br>v.<br><br>PDD HOLDINGS, INC., a Cayman Islands corporation, WHALECO, INC., a Delaware corporation, and DOES 1-10,<br><br>    Defendants. | Case No.  1:23-cv-04729<br><br>Hon. Sharon Johnson Coleman<br><br>JURY TRIAL DEMANDED |

**REPLY MEMORANDUM TO PLAINTIFF'S OPPOSITION TO DEFENDANT PDD HOLDINGS, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**TABLE OF CONTENTS**

|      |        |                                                                                                                                                                      | Page |
|------|--------|----------------------------------------------------------------------------------------------------------------------------------------------------------------------|------|
| I.   | INTRODUCTION | | 1 |
| II.  | ARGUMENT | | 2 |
|      | A.     | Plaintiff Failed to Establish Specific Jurisdiction Over PDD | 2 |
|      |        | 1. Plaintiff Cannot Show That PDD Controls or is an Alter Ego of WhaleCo. | 2 |
|      |        | 2. Plaintiff's Alleged Injury Does Not Arise from PDD's Conduct Because PDD Has Not Engaged in Any Conduct in Illinois. | 7 |
|      |        | 3. Personal Jurisdiction Over PDD Does Not Comport with Fair Play and Substantial Justice. | 8 |
|      | B.     | Plaintiff Has Failed to Establish Personal Jurisdiction Under Rule 4(k)(2). | 9 |
|      | C.     | The Court Should Deny Plaintiff's Request for Jurisdictional Discovery as Plaintiff Failed to Establish a *Prima Facie* Case for Personal Jurisdiction. | 13 |
| III. | CONCLUSION | | 14 |

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Abelesz v. OTP Bank*,
  692 F.3d 638 (7th Cir. 2012) ...................................................................................1, 2, 3, 7

*Alderson v. S. Co.*,
  321 Ill. App. 3d 832 (2001) ...................................................................................................3

*Allergan, Inc. v. Dermavita Ltd. P'ship, Dima Corp. S.A.*,
  SACV 17- 00619-CJC (DFMx), 2018 WL 1406913 (C.D. Cal. Jan. 3, 2018)........................11

*Bakhtiari v. Doe*,
  No. 22 C 2406, 2022 WL 17593027 (N.D. Ill. Dec. 13, 2022) ................................................2

*Campbell v. Fast Retailing USA, Inc.*,
  No. 14-6752, 2015 WL 9302847 (E.D. Pa. Dec. 22, 2015).....................................................6

*Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*,
  230 F.3d 934 (7th Cir. 2000) ............................................................................................9, 13

*CG2 Inc. v. Int'l Game Tech PLC*,
  No. 16 C 8794, 2017 WL 2985741 (N.D. Ill. July 13, 2017) ..................................................5

*City of Greenville, Ill. v. Syngenta Crop Protection, Inc.*,
  830 F.Supp.2d 550 (S.D. Ill. 2011)......................................................................................6, 7

*Corr Wireless Comms., L.L.C. v. AT&T, Inc.*,
  907 F.Supp.2d 793 (N.D. Miss. 2012)....................................................................................6

*Curry v. Revolution Laboratories, LLC*,
  949 F.3d 385 (7th Cir. 2020) ..................................................................................................8

*DMC Machinery Am., Corp. v. Heartland Machine & Engineering, LLC*,
  No. 16-cv-269, 2016 WL 6562392 (N.D. Ill. Nov. 2, 2016) ..................................................7

*Drake v. Ocwen Financial Corp.*,
  No. 09-C-6114, 2010 WL 1910337 (N.D. Ill. May 6, 2010)...............................................1, 4

*Erie Foods Intern. v. Apollo Group & Apollo USA, Inc.*,
  No. 04 C 6610, 2006 WL 932344 (N.D. Ill. Apr. 10, 2006)....................................................5

*Euromarket Designs, Inc. v. Crate & Barrel Ltd.*,
  96 F. Supp. 2d 824 (N.D. Ill. 2000) .......................................................................................9

*Evans v. Wright Medical Technology, Inc.*,
  No. 3:19-cv-00160-DRL-MGG, 2019 WL 5390548 (N.D. Ind. Oct. 21, 2019) ...................5, 6

*Fumoto Giken Co. Ltd. v. Mistuoka*,
  Civ. 14-9797 DMG, 2015 WL 12766167 (C.D. Cal. Apr. 16, 2015)......................................11

*General Ins. Co. of Am. v. Clark Mall, Corp.*,
  631 F.Supp.2d 968 (N.D. Ill. Apr. 16, 2009).........................................................................4

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
  284 F.3d 1114 (9th Cir. 2002) ...............................................................................................9

*Gorman v. Goldcorp, Inc.*,
  No. 07-CV-0155-MJR, 2007 WL 4208982 (S.D. Ill. Nov. 26, 2007).....................................10

*Hill v. Capital One Bank (USA), N.A.*,
  No. 14-cv-6236, 2015 WL 468878 (N.D. Ill. Feb. 3, 2015).......................................................7

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,
  485 F.3d 450 (9th Cir. 2007) ...............................................................................................10

*Hot Wax, Inc. v. Stone Soap Co., Inc.*,
  No. 97 C 6878, 1999 WL 183776 (N.D. Ill. Mar. 25, 1999) .......................................................9

*JT's Frames, Inc. v. Casares*,
  No. 16-cv-2504, 2018 WL 835225 (N.D. Ill. Feb. 13, 2018).....................................................14

*Labtest Intern., Inc. v. Centre Testing Intern. Corp.*,
  766 F. Supp.2d 854 (2011) ....................................................................................................9

*LaSalle Nat. Bank v. Vitro, Sociedad Anonima*,
  85 F.Supp.2d 857 (N.D. Ill. Feb. 16, 2000) ...................................................................1, 5, 6

*Miami Prods. & Chemical Co. v. Olin Corp.*,
  545 F.Supp.3d 1 (W.D.N.Y. 2021) ........................................................................................6

*Monster Cable Prod., Inc. v. Euroflex S.R.L.*,
  642 F. Supp. 2d 1001 (N.D. Cal. 2009) ...............................................................................12

*Poms v. Dominion Diamond Corp.*,
  2019 WL 2106090 (N.Y. Sup. Ct. May 15, 2019)................................................................10

*Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*
  338 F.3d 773 (7th Cir. 2003) ...........................................................................................4, 8

*Quilala v. Sun Power*,
  Civ. No. 5-00080 JMS-BMK, 2015 WL 4986012 (D. Hawai'i Aug. 20, 2015) ......................6

*Ramteq Inc. v. Alfred Karcher, Inc.*,
　No. H-05-3224, 2006 WL 8451178 (S.D. Tex. Sept. 18, 2006)..............................................11

*Rogers v. City of Hobart*,
　996 F.3d 812 (7th Cir. 2021) ...................................................................................................2

*Schulman v. Glob. Citizens Travel, LLC*,
　No. 13-cv-23766, 2015 WL 11018438 (S.D. Fla. Jan. 20, 2015)...........................................11

*Siswanto v. Airbus*,
　153 F.Supp.3d 1024 (N.D. Ill. 2015) .....................................................................................13

*In re Teekay Offshore Partners L.P. Common Unitholders Litig.*,
　No. 19-cv-6483 (RA), 2021 WL 1227415 (S.D.N.Y. Mar. 31, 2021)....................................10

*Ticketreserve, Inc. v. Viagogo, Inc.*,
　656 F.Supp.2d 775 (N.D. Ill. Aug. 11, 2009) ........................................................................13

*Touchcom, Inc. v. Bereskin & Parr*,
　574 F.3d 1403 (Fed. Cir. 2009)..............................................................................................12

*United States v. Aquatherm GmbH*,
　609 F. Supp.3d 1163 (D. Or. July 5, 2022)............................................................................12

*Venmill Indus., Inc. v. ELM, Inc.*,
　100 F.Supp.3d 59 (D. Mass. 2015) ........................................................................................10

*Workforce Software, LLC v. Workforce.com, Inc.*,
　No. 20 C 7365, 2021 WL 4963608 (N.D. Ill. Oct. 26, 2021) ................................................11

*Xena Investments Ltd. v. Magnum Fund Management Ltd.*,
　No. 11-21065, 2011 WL 13133975 (S.D. Fla. Sep. 14, 2011) .................................................6

**Rules**

Fed. R. Civ. P. 4(k)(2)............................................................................................... *passim*

Fed. R. Civ. P. 12(b)(2)..................................................................................................1, 14

I.    INTRODUCTION

Defendant WhaleCo is a Delaware Corporation, which controls the Temu platform in the United States, and has appeared to defend itself against Plaintiff's incorrect allegations in this lawsuit. (Dkt. 27 ¶¶ 12-13.) PDD, in contrast, has no place in this lawsuit and should be dismissed. PDD submitted a sworn declaration establishing that PDD is a foreign-based holding company that does not operate in any capacity the Temu platform in the United States. (*Id.* ¶¶ 3, 6-10.) PDD has no presence in and no contacts with Illinois or the United States, and has not purposefully directed any activities toward Illinois. (*Id.* ¶¶ 5, 9.) In cases just like this, the Northern District of Illinois has dismissed holding companies for lack of personal jurisdiction. *Abelesz v. OTP Bank*, 692 F.3d 638, 658 (7th Cir. 2012); *LaSalle Nat. Bank v. Vitro, Sociedad Anonima*, 85 F.Supp.2d 857, 865 (N.D. Ill. Feb. 16, 2000). Forcing PDD to litigate here would violate the requirements of due process, and PDD should be dismissed from this lawsuit pursuant to Federal Rule of Civil Procedure 12(b)(2).

In opposition, Plaintiff does not contest that this Court lacks general personal jurisdiction over PDD. Plaintiff instead contends the Court has both (i) specific personal jurisdiction over PDD and (ii) jurisdiction under Federal Rule of Civil Procedure 4(k)(2). Both arguments fail.

There is no basis for specific personal jurisdiction because PDD has not purposefully directed any activities toward this forum, much less activities that result in alleged harm to Plaintiff—indeed, like PDD, it appears that Plaintiff similarly has no connection to Illinois. (*Id.* ¶¶ 5-6, 9.) In response to PDD's sworn declaration, Plaintiff offers cherry-picked quotations from websites and public filings to support his contention that PDD controls and is the alter ego of WhaleCo. But these statements are insufficient to rebut a sworn declaration (*Drake v. Ocwen Financial Corp.*, No. 09-C-6114, 2010 WL 1910337, at *2 (N.D. Ill. May 6, 2010)), and in any event are taken out of context and do not establish that PDD has any control over WhaleCo, let

alone the "unusually high degree of control" necessary to establish personal jurisdiction. *Abelesz*, 692 F.3d at 658.

Plaintiff's argument that personal jurisdiction exists over PDD under Federal Rule of Civil Procedure 4(k)(2) similarly fails. PDD has not purposefully directed any activities toward the United States as a whole. And Plaintiff's request to drag PDD into limited jurisdictional discovery before this Court so Plaintiff may engage in a fishing expedition is improper where, as here, an unrebutted sworn declaration establishes this Court's lack of jurisdiction over PDD.

**II.      ARGUMENT**

    **A.      Plaintiff Failed to Establish Specific Jurisdiction Over PDD**

Plaintiff concedes the Court does not have general personal jurisdiction over PDD. (Dkt. 35 at 6, fn. 1.) Plaintiff asserts only that specific personal jurisdiction exists over PDD. To establish specific personal jurisdiction, Plaintiff must show: (1) "[PDD] has purposefully directed [its] activities at the forum state or purposefully availed [itself] of the privilege of conducting business in the state; (2) the alleged injury arises out of or relates to [PDD]'s forum-related activities; and (3) [the] exercise of personal jurisdiction …comport[s] with traditional notions of fair play and substantial justice." *Rogers v. City of Hobart*, 996 F.3d 812, 819 (7th Cir. 2021) (citation omitted). On each of the three elements, Plaintiff has failed to meet his burden.

            1.      Plaintiff Cannot Show That PDD Controls or is an Alter Ego of WhaleCo.

Plaintiff primarily rests his claim for specific personal jurisdiction on his assertion that "PDD controls and is the alter ego of WhaleCo," the entity that operates the Temu platform. (Dkt. 35 at 7.)[1] As an initial matter, Plaintiff's new allegation that PDD is the "alter ego" of WhaleCo

---

[1] Although a subsidiary's contacts with the forum state can be imputed to a parent company where there are grounds to pierce the corporate veil, Plaintiff has not presented evidence or argument that grounds for piercing the corporate veil exist. *Bakhtiari v. Doe*, No. 22 C 2406, 2022 WL 17593027, at *6-7 (N.D. Ill. Dec. 13, 2022) (a subsidiary's contacts may be imputed to a parent if "there are grounds for

2

does not even appear in the Complaint and thus cannot form the basis to resist a motion to dismiss. (*See generally* Dkt. 1.) Recognizing as much, Plaintiff cites 11 Paragraphs from the Complaint as support for this proposition but quotes none of them. (Dkt. 35 at 7.) The only Paragraph in the Complaint that references the term "alter egos" is Paragraph 15, in which Plaintiff alleges that unnamed Defendants "***Does 1-10*** … act as agents and alter egos of PDD, WhaleCo, and their respective officers and directors." (Dkt. 1. ¶ 15.) Unnamed, fictitious entities are irrelevant to this motion to dismiss.

Even if Plaintiff had alleged the "alter ego" theory that now serves as the cornerstone of his Opposition, the contention that "PDD controls and is the alter ego of WhaleCo" is unsupported by both the facts and the law. As explained in its opening brief, PDD is merely a holding company of its indirect subsidiary WhaleCo and does not itself conduct any substantial business. (Dkt. 26, at 2; *see also* PDD Decl. ¶ 4.) And, as Plaintiff acknowledges, WhaleCo's contacts cannot be imputed to PDD simply because WhaleCo is PDD's indirect subsidiary. (Dkt. 35, at 6.) Rather, Plaintiff must establish that PDD exerts "an unusually high degree of control" over WhaleCo. *Abelesz,* 692 F.3d at 658 (finding no personal jurisdiction because plaintiff failed to show that defendant parent company "exert[ed] an unusually high degree of control over its [U.S.] subsidiary"); *see also Alderson v. S. Co.*, 321 Ill. App. 3d 832, 854 (2001) (recognizing that "[p]arents of wholly-owned subsidiaries necessarily control, direct, and supervise subsidiaries to some extent."). Plaintiff's opposition lacks any showing that PDD exerts an unusually high degree of control over WhaleCo.

---

piercing the corporate veil" or "if the parent exerts substantial control over the subsidiary.") Plaintiff's sole argument is that PDD exercises substantial control over WhaleCo such that WhaleCo's contacts should be imputed to PDD. (Dkt. 35 at 7.) For all the reasons herein, that is incorrect.

Plaintiff first recites several allegations in the Complaint as if they are true, and asserts they establish PDD's control over WhaleCo. (Dkt. 35 at 2-3.) But these allegations are not evidence. *General Ins. Co. of Am. v. Clark Mall, Corp.*, 631 F.Supp.2d 968, 978 (N.D. Ill. Apr. 16, 2009) (finding allegations in an underlying complaint were not themselves evidence). Nor are they accurate. PDD controverted the allegations in Plaintiff's Complaint with a sworn declaration and, thus, the Court need not accept them as true when resolving this Motion. (Dkt. 26 at 3 (citing *Drake v. Ocwen Financial Corp.*, No. 09-C-6114, 2010 WL 1910337, at *2 (N.D. Ill. May 6, 2010).) As set forth in PDD's Declaration, WhaleCo, not PDD, controls the U.S. operations of the Temu platform in the United States. (PDD Decl. ¶¶ 6-10.) In view of this evidence, Plaintiff had an obligation to "go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.* 338 F.3d 773, 783 (7th Cir. 2003). But Plaintiff failed to submit any meaningful evidence that supports exercising jurisdiction over PDD.

Instead, what Plaintiff came up with is a smattering of cherry-picked excerpts from website posts, filings, and third-party hearsay articles, including PDD's 2022 Form 20-F to the SEC (Dkt. 35-1, Ex. 1), a single screenshot of the website, www.pddholdings.com (Dkt. 35-1, Ex. 4), the Temu website (Dkt. 35-1, Ex. 3), an article by the Hindu Business Line (Dkt. 35-1, Ex. 5), an article by the iTechPost (Dkt. 35-1, Ex. 6), an article by the Washington Post (Dkt. 35-1, Ex. 7), and an article by SourceinBox (Dkt. 35-1, Ex. 2). But none of the sources cited by Plaintiff establish anything more than a parent-subsidiary relationship. For example, PDD's Form 20-F specifically states that PDD is a "holding company" with "no operations of its own." (Dkt. 35-1, Ex. 1 at 4, 8, 9.) In addition, the prior version of the Temu website merely stated "Temu was *founded* … by its parent company PDD Holdings, Inc." and that "Temu leverages parent company

4

PDD Holdings'" network. (Dkt. 35-1, Ex. 3 at 1 (emphasis added).) This language does not show PDD *operates* or *controls* Temu. In fact, none of these sources show that PDD exercises substantial control of WhaleCo or Temu for purposes of personal jurisdiction. *LaSalle Nat. Bank v. Vitro, Sociedad Anonima*, 85 F.Supp.2d 857, 865 (N.D. Ill. Feb. 16, 2000) ("Personal jurisdiction is based on actual evidence of control").

With respect to the SEC filings, courts have found that statements in SEC filings are insufficient to show that a parent company has exerted an unusually high degree of control over its subsidiaries. *CG2 Inc. v. Int'l Game Tech PLC*, No. 16 C 8794, 2017 WL 2985741, at *8 (N.D. Ill. July 13, 2017) (finding that statements in a 20-F annual report to the SEC where a parent company referred to itself and its subsidiary as "we" and "our" insufficient to support an inference that the parent company exerts an unusually high degree of control over its subsidiaries); *Evans v. Wright Medical Technology, Inc.*, No. 3:19-cv-00160-DRL-MGG, 2019 WL 5390548, at *3-4 (N.D. Ind. Oct. 21, 2019) (finding statements on a Form 10-Q, 10-K where parent company took credit for the design and manufacture of a product made by its subsidiary "illustrate[d] nothing more than a parent-subsidiary relationship," and "cannot be a basis for specific jurisdiction").

Similarly, promotional statements made on PDD's and Temu's respective websites do not provide evidence that PDD controls WhaleCo or Temu.[2] *LaSalle Nat. Bank*, 85 F.Supp.2d at 865 (finding that a parent company's claims on its website and in "various public filings" that it was a single large corporation were irrelevant for establishing personal jurisdiction over the parent); *Erie Foods Intern. v. Apollo Group & Apollo USA, Inc.*, No. 04 C 6610, 2006 WL 932344, at *4 (N.D. Ill. Apr. 10, 2006) (facts such as "listing the subsidiary on its website, reviewing the subsidiary's

---

[2] Pinduoduo is wholly unrelated to whether PDD has actual control of WhaleCo. As Plaintiff acknowledges, Pinduoduo is a separate platform from Temu that is offered to Chinese consumers. (Dkt. 35, at 8.) Accordingly, it is not related to WhaleCo nor the Temu website in the U.S.

5

business plans, and including the subsidiary on a consolidated financial sheet" were not indicative of control, but merely a parent-subsidiary relationship); *Evans*, 2019 WL 5390548 at *4-6 ("If anything, [defendant's] press releases reaffirm a parent-subsidiary relationship…[t]he press releases fail to show that [defendant], as the parent, substantially controlled [subsidiary][.]" ). The same goes for statements by third parties such as the various news websites cited by Plaintiff. *Quilala v. Sun Power*, Civ. No. 5-00080 JMS-BMK, 2015 WL 4986012, at *7 (D. Hawai'i Aug. 20, 2015) (finding evidence of a news article insufficient to support specific jurisdiction); *Corr Wireless Comms., L.L.C. v. AT&T, Inc.*, 907 F.Supp.2d 793, 796, 802 (N.D. Miss. 2012) (finding evidence of news articles, public statements to the FCC, and judicial filings and pleadings insufficient to assert personal jurisdiction over a parent company). Moreover, Plaintiff cannot rely on third party articles and news websites to establish a *prima facie* case for specific jurisdiction because those sources are inadmissible hearsay. *E.g., Miami Prods. & Chemical Co. v. Olin Corp.*, 545 F.Supp.3d 1, 14 (W.D.N.Y. 2021) (holding hearsay evidence was insufficient to establish personal jurisdiction); *see also Campbell v. Fast Retailing USA, Inc.*, No. 14-6752, 2015 WL 9302847, at *6 (E.D. Pa. Dec. 22, 2015) (finding a newspaper article and website were inadmissible hearsay); *Xena Investments Ltd. v. Magnum Fund Management Ltd.*, No. 11-21065, 2011 WL 13133975 at *3 (S.D. Fla. Sep. 14, 2011) (finding an affidavit citing copies of websites and online articles inadmissible as hearsay).

Plaintiff's reliance on *LaSalle National Bank*, and *City of Greenville, Ill. v. Syngenta Crop Prot., Inc.* to support his position is misplaced. (Dkt. 35 at 7, 9.) In fact, as discussed above, the court in *LaSalle National Bank* specifically found that the type of public statements that Plaintiff cites are ***irrelevant*** in establishing personal jurisdiction over a parent company. *LaSalle Nat. Bank*, 85 F.Supp.2d at 865-66. And the court in *City of Greenville* merely found exercising personal

6

jurisdiction over a parent company was proper because the parent company "made decisions about day-to-day operations" of the subsidiary and "controll[ed] the designing of the product and determine[d] marketing strategies and distribution plans." *City of Greenville, Ill. v. Syngenta Crop Protection, Inc.*, 830 F.Supp.2d 550, 563-64 (S.D. Ill. 2011). As confirmed by PDD's sworn declaration, none of those circumstances are present here. *See generally* Dkt. 27.

Plaintiff has failed to make a *prima facie* showing that PDD exerts "an unusually high degree of control" over WhaleCo. *Abelesz*, 692 F.3d at 658. It indisputably does not—PDD "does not itself conduct any substantial business," merely "serves as a holding company of its subsidiaries," and "does not operate the Temu platform." (Dkt. 27 ¶¶ 4, 10.) Plaintiff thus failed to adequately rebut PDD's declaration challenging Plaintiff's allegations. *DMC Machinery Am., Corp. v. Heartland Machine & Engineering, LLC*, No. 16-cv-269, 2016 WL 6562392, at *3-5 (N.D. Ill. Nov. 2, 2016) (finding plaintiff had not rebutted defendant's declaration challenging the assertion of personal jurisdiction); *Hill v. Capital One Bank (USA), N.A.*, No. 14-cv-6236, 2015 WL 468878, at *3 (N.D. Ill. Feb. 3, 2015) (same).

2. Plaintiff's Alleged Injury Does Not Arise from PDD's Conduct Because PDD Has Not Engaged in Any Conduct in Illinois.

Separately, Plaintiff's claim that his alleged injury arises out of PDD's conduct in Illinois fails because Plaintiff has **no evidence** that PDD conducts **any** business in Illinois or the United States, much less business related to the Temu platform that allegedly resulted in injury to Plaintiff. Tellingly, Plaintiff provides a single Paragraph on this issue, which is devoid of any evidence of activity by PDD in Illinois, much less activity resulting in any alleged harm to Plaintiff. (Dkt. 35 at 9.) Nor could Plaintiff provide such evidence. PDD "has no offices or property in Illinois," "does not sell any products in Illinois," and "does not specifically target any website or business toward Illinois." (Dkt. 27 ¶¶ 5, 6, 9.) Plaintiff again relies solely on the unsupported and incorrect

7

allegations in his Complaint. As explained above, these allegations are insufficient to overcome PDD's evidence in opposition to jurisdiction. *See e.g.*, *Purdue Research Found.*, 338 F.3d at 783 (When a defendant submits "evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction.")

Plaintiff cites only a single case to support his argument that his injury arose from PDD's conduct. But unlike here, in *Curry v. Revolution Labs*, there was no dispute about the defendant's involvement in selling products on its own website and on third party websites. *Curry v. Revolution Laboratories, LLC*, 949 F.3d 385, 399 (7th Cir. 2020). Rather, the defendant, while admitting selling products, argued that its website sales were not purposefully directed at Illinois, and that no connection existed between its sales in Illinois and plaintiff's claims. *Id.* In contrast, in this case, PDD does not sell any products. (Dkt. 27 at ¶ 6.) And PDD's sworn declaration confirms that PDD has no involvement or control over the operation of the Temu platform, and certainly no involvement in sales to Illinois consumers made via the Temu platform. (Dkt. 27 ¶¶ 5, 6, 9.) Simply put, PDD has no forum-related activities, and thus Plaintiff's alleged injury could not have arisen from PDD's forum-related conduct.[3]

### 3. Personal Jurisdiction Over PDD Does Not Comport with Fair Play and Substantial Justice.

Plaintiff makes a cursory argument that the exercise of personal jurisdiction over PDD would comport with traditional notions of fair play and substantial justice. But the opposite is

---

[3] Plaintiff's assertion that PDD conceded to personal jurisdiction in Illinois in *Roadget PTE. Ltd. V. WhaleCo, Inc.* is incorrect. (Dkt. 35, at 11 n.3.) PDD repeatedly denied personal jurisdiction and intended to move to dismiss. but the case was resolved before PDD filed its motion. Case No. 22-cv-7119, Dkt. 50, at 2 (denying personal jurisdiction); Dkt. 79, at 1 n.1 (noting PDD would move to dismiss for personal jurisdiction); Dkt. 203 (dismissing case).

8

true: this factor favors dismissal. Because PDD is a Cayman Islands company with its executive office in Ireland and thus outside the United States, exercising personal jurisdiction would impose a significant burden on PDD. *See Labtest Intern., Inc. v. Centre Testing Intern. Corp.*, 766 F. Supp.2d 854, 864 (2011) ("The exercise of jurisdiction over [defendant] by an Illinois court would impose a significant burden on [defendant], as its Shenzhen headquarters is located nearly 8,000 miles from Chicago."). That PDD is based outside of the United States also "undermines the reasonableness" of exercising personal jurisdiction and hailing PDD into court. *See Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1126 (9th Cir. 2002) (when the defendant is from a foreign nation, "the sovereignty barrier is high and undermines the reasonableness of personal jurisdiction"); *Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F. Supp. 2d 824, 840 (N.D. Ill. 2000) (The efficient resolution factor "focuses on the location of the evidence and witnesses."). Moreover, Plaintiff is not a citizen of Illinois, and "Illinois does not have a substantial interest in protecting the rights of [plaintiffs] outside its borders." *See Hot Wax, Inc. v. Stone Soap Co., Inc.*, No. 97 C 6878, 1999 WL 183776, at *7 (N.D. Ill. Mar. 25, 1999). Nor is this an instance where granting PDD's motion would deprive Plaintiff of his day in Court— WhaleCo has appeared to defend the allegations. (Dkt. 29.) At bottom, Plaintiff has failed to establish specific personal jurisdiction over PDD, and his claims against PDD should be dismissed.

**B. Plaintiff Has Failed to Establish Personal Jurisdiction Under Rule 4(k)(2).**

Plaintiff's attempt to establish personal jurisdiction over PDD under Federal Rule of Civil Procedure 4(k)(2) also fails. To establish jurisdiction under Rule (4)(k)(2), four conditions must be met: "(1) the plaintiff's claims must be based on federal law; (2) no state court could exercise jurisdiction over the defendants; (3) the exercise of jurisdiction must be consistent with the laws of the United States; and (4) the exercise of jurisdiction must be consistent with the Constitution." *Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230

9

F.3d 934, 940 (7th Cir. 2000). To determine whether jurisdiction exists under Rule 4(k)(2), courts employ the same three-part test used for specific personal jurisdiction, but instead consider a defendant's contacts with the entire U.S. *Venmill Indus., Inc. v. ELM, Inc.*, 100 F.Supp.3d 59, 69 (D. Mass. 2015); *see also Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 462 (9th Cir. 2007) (finding defendants contacts insufficient under 4(k)(2)). Plaintiff failed to show that PDD has sufficient contacts with the U.S. to establish jurisdiction under Rule 4(k)(2).

Plaintiff's claim that PDD conducts business throughout the U.S. rests once again on the same false assertion that PDD controls and operates WhaleCo and the Temu platform. And Plaintiff relies on the same smattering of websites, public filings, and third-party articles to support that assertion (*see* Section.II.A.1), along with two additional and equally inadmissible articles from Reuters (Dkt. 35-1, Ex. 9), and CNN (Dkt. 35-1, Ex. 10.) But, as explained above, none of these statements show that PDD exerts substantial control over WhaleCo or the Temu platform in the U.S. *Id.*

Plaintiff also contends that PDD's listing on the NASDAQ supports personal jurisdiction under Rule 4(k)(2). But that argument ignores that numerous courts have held personal jurisdiction cannot be established simply because a defendant is listed on a stock exchange. *Gorman v. Goldcorp, Inc.*, No. 07-CV-0155-MJR, 2007 WL 4208982, at *3 (S.D. Ill. Nov. 26, 2007) ("The mere listing of Goldcorp's stock on the New York Stock Exchange is an insufficient basis to sustain personal jurisdiction here."); *In re Teekay Offshore Partners L.P. Common Unitholders Litig.*, No. 19-cv-6483 (RA), 2021 WL 1227415, at *6, fn. 5 (S.D.N.Y. Mar. 31, 2021) (citing *Poms v. Dominion Diamond Corp.*, 2019 WL 2106090, at *3 (N.Y. Sup. Ct. May 15, 2019) ("[I]t has been long held that a corporation is not doing business in New York for the purposes of conferring jurisdiction merely because its shares are listed on a New York Stock Exchange."). The mere fact

that PDD is listed on the NASDAQ is an insufficient basis to sustain personal jurisdiction. Tellingly, Plaintiff failed to cite any authority to the contrary.

That PDD has filed trademark applications with the U.S. Patent and Trademark Office ("USPTO") does not support personal jurisdiction either. As an initial matter, PDD's trademark applications are wholly unrelated to Plaintiff's copyright claim in this case, and thus cannot establish personal jurisdiction. *Workforce Software, LLC v. Workforce.com, Inc.*, No. 20 C 7365, 2021 WL 4963608, at *6 (N.D. Ill. Oct. 26, 2021) (holding defendant's trademark filings with the USPTO did not establish personal jurisdiction under Rule 4(k)(2) because "the complained of actions" did not "arise out of [defendant's] activities before the USPTO"). And courts have consistently found that the mere registration of a trademark with the USPTO is insufficient to establish personal jurisdiction under Rule 4(k)(2). *See, e.g., Allergan, Inc. v. Dermavita Ltd. P'ship, Dima Corp. S.A.*, SACV 17- 00619-CJC (DFMx), 2018 WL 1406913, at *4 (C.D. Cal. Jan. 3, 2018) ("Dermavita's filing of trademark applications and petitions to cancel Allergan's trademarks are also insufficient" under Rule 4(k)(2)); *Fumoto Giken Co. Ltd. v. Mistuoka*, Civ. 14-9797 DMG, 2015 WL 12766167, at *5 (C.D. Cal. Apr. 16, 2015) ("[T]his Court is not persuaded that the mere registration of a trademark with the PTO, without more, amounts to the type of minimum contacts which would justify haling a foreign defendant into federal court."); *Schulman v. Glob. Citizens Travel, LLC*, No. 13-cv-23766, 2015 WL 11018438, at *6 (S.D. Fla. Jan. 20, 2015) (rejecting "the proposition that, by registering a trademark in the United States, a foreign corporation has submitted itself to the general jurisdiction of any federal court in the United States for any claim of any kind"); *Ramteq Inc. v. Alfred Karcher, Inc.*, No. H-05-3224, 2006 WL 8451178, at *5 (S.D. Tex. Sept. 18, 2006) ("Karcher's registration of patents and trademarks does not give rise to Rule 4(k)(2) jurisdiction.").

11

Plaintiff's cited authority concerning the use of USPTO filings to establish personal jurisdiction is distinguishable from this case. Specifically, in both *Touchcom* and *Monster Cable*, the plaintiff's cause of action arose from the defendant's activities before the PTO. *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1416 (Fed. Cir. 2009) (holding defendant's filing of a patent application was relevant to personal jurisdiction where plaintiff's claims involved patent infringement); *see also Monster Cable Prod., Inc. v. Euroflex S.R.L.*, 642 F. Supp. 2d 1001, 1006,1010 (N.D. Cal. 2009) (holding defendant's trademark registration was sufficient to establish personal jurisdiction where plaintiff's claims were based on trademark infringement). In contrast, Plaintiff's claims in this case involve copyright infringement. (Dkt. 1.) As a result, PDD's trademark applications have no bearing on any claim in this case, and are insufficient to establish personal jurisdiction. *Aquartherm* is likewise distinguishable, as the evidence in that case showed the defendant sold products to the U.S. market, shipped products to the U.S., delivered products to U.S. warehouses, advertised in the U.S., campaigned for modifications to the U.S. standards and codes to allow the use of its products in the U.S., and had its director take sales trips to the U.S. *United States v. Aquatherm GmbH*, 609 F. Supp.3d 1163, 1172 (D. Or. July 5, 2022). In contrast, the evidence here demonstrates that PDD is merely a holding company, and conducts no such activity. (*See generally* Dkt. 27.)

Finally, for the reasons explained above, asserting personal jurisdiction over PDD under Rule 4(k)(2) does not comport with fair play and substantial justice—quite the opposite, it would be unfair to hail PDD into this Court. (*See* Section II.A.3.) As Plaintiff failed to establish a *prima facie* case to support asserting personal jurisdiction over PDD, this Court should dismiss Plaintiff's claims against PDD.

### C. The Court Should Deny Plaintiff's Request for Jurisdictional Discovery as Plaintiff Failed to Establish a *Prima Facie* Case for Personal Jurisdiction.

The Seventh Circuit requires that a plaintiff first establish a *prima facie* case of jurisdiction over the defendant before the plaintiff is entitled to jurisdictional discovery. *See Central States,* 230 F.3d at 946–47 (finding the district court did not abuse discretion in denying jurisdictional discovery where evidence was insufficient to show a colorable basis for jurisdiction). Plaintiff must clear a "high hurdle" to justify jurisdictional discovery. *Siswanto v. Airbus*, 153 F.Supp.3d 1024, 1032 (N.D. Ill. 2015) (denying plaintiff's request for jurisdictional discovery because "[p]laintiffs failed to make a *prima facie* showing of personal jurisdiction, let alone proffer what limited discovery requests they would issue.") This is particularly true in seeking discovery from foreign nationals, like PDD, as courts have recognized they "usually should not be subject to extensive discovery to determine whether personal jurisdiction exists over them." *Siswanto*, 153 F.Supp.3d at 1032 (citing *Central States*, 230 F.3d at 946).

Plaintiff failed to meet the "high hurdle" necessary to obtain jurisdictional discovery from PDD. As in *Siswanto*, Plaintiff's cited "evidence" merely "confirmed an affiliation between [PDD and WhaleCo]—not that [PDD] had exercised an unusually high degree of control over the subsidiary." *Id.* at 1032; *see also* Sections II.A-B. Accordingly, Plaintiff "failed to make a *prima facie* showing of personal jurisdiction." *Siswanto*, 153 F.Supp.3d at 1032.

None of Plaintiff's cited authority supports granting jurisdictional discovery in this case. In *Ticketreserve, Inc. v. Viagogo, Inc.* the court **denied** a request for jurisdictional discovery where the defendant submitted a declaration denying its operation of a U.S. based website. 656 F.Supp.2d 775, 782-83 (N.D. Ill. Aug. 11, 2009). Although plaintiff submitted exhibits showing the website was aimed at Illinois residents, the plaintiff did not provide any evidence showing the defendant was involved with the website. *Id.* Similarly, here, Plaintiff has not presented support for the bald

13

allegation that PDD controls WhaleCo or Temu platform. Nor has Plaintiff submitted any comparable evidence to that present in *JT's Frames, Inc. v. Casares*, where the defendant admitted there was a relationship between companies and the evidence showed defendants shared the same business address and the same vice president of sales. No. 16-cv-2504, 2018 WL 835225, at *5 (N.D. Ill. Feb. 13, 2018). Even then, the court in *JT's Frames* considered it "a close call" when allowing limited jurisdictional discovery. *Id.* This Court should not allow Plaintiff to pursue jurisdictional discovery based solely on his unsupported allegations that PDD controls WhaleCo.

### III. CONCLUSION

For all these reasons, PDD asks the Court to grant its motion to dismiss Plaintiff's Complaint against Defendant PDD with prejudice under Federal Rule of Civil Procedure 12(b)(2).

Dated: November 14, 2023

/s/ *Garret A. Leach, P.C.*
Garret A. Leach, P.C. (#6237520)
Brian A. Verbus (#6314193)
Sarah M. Craig (#6326757)
Xaviere N. Giroud (#6334400)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
garret.leach@kirkland.com
brian.verbus@kirkland.com
sarah.craig@kirkland.com
xaviere.giroud@kirkland.com

*Attorneys for Defendants*